IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
FILED
June 27, 2005
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **MIKE BIGGS,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| vs. § | **CIVIL ACTION NO. 3:04-CV-1920-R** |
| § | |
| **BASS PRO OUTDOOR WORLD, LLC,** § | |
| **INCREDIBLE TECHNOLOGIES, INC.,** § | |
| **and PLAY MECHANIX, INC.,** § | |
| § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Before this Court are Incredible Technologies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Play Mechanix, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (collectively the "Motions to Dismiss") (both filed March 25, 2005). For the reasons discussed below, Defendants' Motions to Dismiss are **DENIED**.

### I. BACKGROUND

Plaintiff Mike Biggs ("Biggs"), a wildlife photographer who operates his business from his home in Fort Worth, Texas, filed this copyright infringement action against Defendants Bass Pro Outdoor World, LLC ("Bass Pro"), Incredible Technologies, Inc. ("Incredible"), and Play Mechanix, Inc. ("Play"). Plaintiff claims the Defendants infringed upon his copyrights by copying, distributing, and displaying certain images of deer and turkey, images which Biggs allegedly authored and owned, for use in the video games "Big Buck Hunter," "Big Buck Hunter: Shooter's Challenge," and "Big Buck Hunter II: Sportsman's Paradise" (collectively, the "BBH Games").

Each Defendant's connection to the BBH Games is distinct. Defendant Bass Pro is a Missouri limited liability company registered to do business in many states, including Texas. Bass Pro operates retail sporting good stores throughout the United States, including one in Grapevine, TX, in which Plaintiff alleges Bass Pro operates two coin operated BBH Games displaying the allegedly infringing images.[1] Defendant Play is the software developer responsible for designing the BBH Games' software. Defendant Incredible is the company responsible for manufacturing, selling, and marketing the BBH Games around the United States, including in Texas. Both Play and Incredible are Illinois corporations and claim that this Court lacks personal jurisdiction over them.[2]

## II. ANALYSIS

Defendants Incredible and Play each move to dismiss the claims against them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Because this Court finds that the Defendants are subject to this Court's specific jurisdiction, the motions are **DENIED**.

### A.     Rule 12(b)(2) Standard

Rule 12(b)(2) authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant. A federal court sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent permitted by applicable state law. Fed.R.Civ.P. 4(e)(1). The Texas long-arm statute provides for jurisdiction to the fullest extent permitted by the U.S. Constitution. *See* Tex. Civ. Prac. & Rem. Code. Ann. §17.042 (West 1997);

---

[1] Defendant Bass Pro does not challenge this Court's jurisdiction.

[2] All three Defendants have each filed motions to transfer venue of this case to the Northern District of Illinois. This Court will address those three motions in a separate opinion.

*MEMORANDUM OPINION AND ORDER–Page 2*

*Panda Brandywine Corp. v. Potomac Electric Power Co.,* 253 F.3d 865, 867 (5th Cir. 2001) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). Under the Due Process Clause of the Fourteenth Amendment, jurisdiction over a nonresident defendant comports with due process if: "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 868 (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citations and internal quotation marks omitted)).

Minimum contacts can be established through contacts sufficient for either specific or general jurisdiction. Specific jurisdiction over a nonresident individual is proper when the nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. at 868 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)(internal quotation marks omitted)). General jurisdiction arises "when the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action are continuous and systematic." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)).

This Court considers Defendants' Motions to Dismiss without conducting an evidentiary hearing. Thus, to survive Defendants' Motions, Plaintiff has the burden of "produc[ing] sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id*. In determining whether or not Plaintiff has made a prima facie case, this Court "must accept as true [Plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits

and other documentation." *Id*. Although a lower standard than that needed to prevail at trial, the Fifth Circuit noted in *Panda Brandywine* that the lower burden of proof:

> does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state.

*Panda Brandywine*, 253 F.3d at 868 (citing *Burger King*, 471 U.S. at 474). Mere "conclusory allegations" without any suggestion of supporting facts are insufficient. *Id*. at 869.

**B. Stream of Commerce Theory of Specific Jurisdiction**

Plaintiff argues that the Court has specific jurisdiction over the Defendants based on the "stream of commerce" theory.[3] Under the stream of commerce theory, a court may exercise specific jurisdiction when the defendant's contact with the forum arises from the sale or manufacture of a product which has caused harm in the forum state, so long as the defendant delivered the product into the stream of commerce expecting that it should be purchased by or used by consumers in the forum state. See *Gulf Consol. Servs., Inc. v. Corinth Pipeworks, SA*, 898 F.2d 1071, 1073 (5th Cir. 1990).

Although the Fifth Circuit has been "reluctant to extend the stream-of-commerce principle outside the context of products liability cases," it has not foreclosed that possibility either. *Nuovo Pignone, SPA, v. Storman Asia*, 310 F.3d 374 (5th Cir. 2002); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000). In *Alpine View*, a breach of contract and fraud action, the court refused to apply the stream-of-commerce principle because the plaintiffs there "failed to make a

---

[3] Plaintiff also argues the Court has general jurisdiction over the Defendants, but the Court need not reach this argument in reaching its decision.

prima facie showing that the litigation results from alleged injuries that arise out of or relate to" defendant's contacts with the forum. *Alpine View*, 205 F.3d at 217. In other words, the *Alpine View* court declined to apply the stream of commerce principle in that case, not because it was not a products liability case, but rather, because the plaintiffs alleged facts of only general jurisdiction.[4] Thus, the Court is not prevented from applying the stream of commerce test in this case simply because it is a copyright infringement action rather than one dealing with products liability.

Additionally, at least one court in this district has issued an opinion permitting the stream of commerce theory to support a finding of specific jurisdiction in a copyright case. See *Isbell v. DM Records, Inc.*, 2004 U.S. Dist. LEXIS 10394, No. 3:02-cv-1408, 2004 WL 1243153 (TXND June 4, 2004). In *Isbell*, Chief Judge A. Joe Fish concluded that the stream of commerce test was met to create specific jurisdiction over DM Records, Inc. ("DM"), a nonresident defendant which received sales income and royalties on records sold to the forum through an agreement with a third party distributor. There, the agreement between DM and the distributor reflected DM's expectation of and financial interest in having its recordings distributed throughout the United States, including in Texas. *Id*. at *32.[5] This Court wholly agrees with the reasoning and conclusion reached in *Isbell* and finds that the stream of commerce theory may apply to establish specific jurisdiction in a copyright case.

**C. Stream of Commerce Analysis**

---

[4] To the contrary, in the present case, Plaintiff has alleged facts of specific jurisdiction. Thus, Defendants' argument that "the 'stream of commerce' theory should not be considered by this Court as a way for the Plaintiff to show personal jurisdiciton over the Defendants" is a misapplication of *Alpine View*. Reply (Tab D of Joint Motion Submission filed March 25, 2005) at 8.

[5] Furthermore, the allegedly infringing recordings had been for sale in Texas. *Id*.

This Court finds that in this case, just as in *Isbell*, the Plaintiff has asserted sufficient facts to satisfy the stream of commerce test and permit a *prima facie* finding of specific jurisdiction over both Defendants Incredible and Play. This copyright infringement case regards the use and reproduction of the allegedly infringing images used in the BBH Games. Plaintiff alleges BBH Games placed into the stream of commerce are located in Texas, and that the reproductions and public displays of the images both on the attraction display and on the monitor when the games are played by a user infringe his copyrights. Accordingly, Plaintiff has demonstrated a connection between the subject matter of this action–copyright infringement–and the presence of the BBH Games in Texas. The remaining question, then, becomes whether Defendants Incredible and Play delivered the allegedly infringing products into the stream of commerce with the expectation that they would make their way into Texas.

**1. Stream of Commerce Facts Related to Incredible**

Incredible sells the coin operated BBH Games to distributors who in turn sell the games to operators across the country. Dore Depo., App. 8. These operators, such as Defendant Bass Pro, own the games which are used by customers. Incredible distributes the BBH Games nationwide. Dore Depo., App. 13. Incredible maintains a register of operators of its BBH Games throughout the country, including those in Texas. Dore Deposition, App. at 18. When an operator makes revenue from someone playing an online game through one of its BBH Games, the operator is "obligated to pay for the service that he's utilized." Dore Depo., App. 29-30. Thus, Incredible makes financial profits not only from the sale of BBH Games to distributors but also from certain usage of BBH Games owned by operators throughout the country, including those in Texas. Being in its financial

interest, Incredible has sold BBH Games and has operators of its BBH Games throughout the country, including Texas. Incredible expects its salespeople to sell its equipment nationwide, including in Texas. Dore Depo., App. 36. Incredible has sold BBH Games, update software for BBH Games, and kits to allow entities to transform other video games (such as Pacman or Mortal Kombat) into BBH Games to entities in Texas. Dore Depo., App. 15-18; Exhibit 12–BBH Product Sales-Texas, App. 37. Many BBH Game operators throughout Texas have registered with Incredible. Exhibit 13–BBH Operators-Texas, App. At 38. Incredible also has a list of BBH Games used for tournament or "on-line" play that are located in Texas whose operators chose to register their games with Incredible. Exhibit 15–BBH Online Game-Texas, App. 47-48. According to that list, 103 BBH Games located in Texas have registered with Incredible.

Incredible encourages its salespersons to sell BBH Games and products in Texas, has sold BBH Games to entities in Texas, maintains registers of BBH Games operating in Texas, and derives revenue from BBH Games sold and operated in Texas. Clearly, Incredible has delivered the allegedly infringing products, BBH Games, into the stream of commerce with the expectation that the allegedly infringing products, BBH Games, would make their way into Texas.[6]

**2. Stream of Commerce Facts Related to Play**

---

[6] It is uncontested that BBH Games, the motivator to this lawsuit, are present and operating in Texas and that at least two are located in Bass Pro's Grapevine store. Also, Incredible readily acknowledges that it occasionally sends replacement parts or software to operators in Texas, has advertised in Texas through national trade journals, has participated in promotion of online tournaments for some of its games, and has had a sales representative in Texas. Incredible's Motion to Dismiss at 5.

*MEMORANDUM OPINION AND ORDER–Page 7*

Play benefits financially from the development, sale, and continued use of BBH Games. The financial benefits Play accrues from the BBH Games extends beyond the initial sale of the software to Incredible. In addition to receiving a one time development fee from Incredible for each game, Play also receives royalties from the license of its BBH Games trademarks to Incredible.[7] Petro Depo., App. 74. A third type of revenue Play derives from the BBH Games is a royalty from tournament, or "on-line," versions of the BBH Games. Petro Depo., App. 76-77.

In developing the software, Play's aim was "to hit the broadest spectrum of the coin-op market–coin-op players." Petro Depo., App. 88. Although Play leaves it to Incredible to make the decisions regarding where and to whom to sell the BBH Games, Play acknowledges that it is in its best interest for Incredible to sell as many units as possible. Petro Depo., App. 100. Also, Play designed the games so that in the beginning, the player can choose which region of the country she wants to play in–e.g., northeast, southeast, south. Petro Depo., App. 89. Play, on its website, advertises that its BBH Games are available for play nationwide.[8] Such advertisements encourage players to use the BBH Games located around the country, including those in Texas. Considering Play's financial incentive to get as many players to play as many BBH Games as possible, wherever they may be located, it is not surprising that Play would set up its website to promote the operators of BBH Games involved with the online tournaments.

---

[7]Play owns the trademark to the BBH Games' names and contractually requires that Incredible include Play's logo on the finished coin operated and ready to play BBH Games. Petro Dep, App. 93.

[8]On Play's website, www.playmechanix.com, the very front page lists links to current news items including one with the heading "First Ever Big Buck Hunter II: Sportsman's Paradise Online Tournament Begins! Players to Compete Nationally for Cash Prizes." A simple navigation through the website allows potential players to search for locations where they can find and play BBH Games around the country, including over 100 games in Texas.

It is uncontested that Play designs and develops the BBH Games software and sells it to Incredible with the intent that the BBH Games be distributed as widely as possible. This is supported by statements on it website regarding the ability to play BBH Games across the country as well as by the fact that Play receives royalties from all those sales and online tournament play from BBH Games located across the country. This Court finds it to be clear that Play, in delivering the software for the BBH Games to Incredible, delivered the allegedly infringing product into the stream of commerce with the expectation that BBH Games would make their way into Texas.

### 3.  The Court's Finding of Special Jurisdiction over Incredible and Play

Taking these facts as true, this Court concludes Play and then Incredible delivered the allegedly infringing products into the stream of commerce with the expectation that the game would make its way into Texas. This Court further finds that Biggs has demonstrated a connection between the subject matter of this action–copyright infringement–and the presence of BBH Games in Texas. Finally, this Court finds that the exercise of jurisdiction over Defendants Incredible and Play does not offend traditional notions of fair play and substantial justice.

Accordingly the Court concludes that Biggs has made a *prima facie* case, under the stream of commerce test for minimum contacts, for exercising jurisdiction over Play and Incredible.

### III.  CONCLUSION

For the reasons discussed above, this Court finds it has personal jurisdiction over Defendants Incredible and Play. Accordingly, Defendants' Motions to Dismiss, are hereby **DENIED**.

**It is so ORDERED.**
**Signed: June 27, 2005.**

_____
**JERRY BUCHMEYER**
**SENIOR U.S. DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**